IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


MACK BLOODSWORTH, JR.,            :

     Plaintiff,                 :

vs.                              :   CIVIL ACTION 06-0252-CG-M

JAMES BROOKS,                     :

     Defendant.                 :


REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the Motion for Summary Judgment of Defendant, James Brooks (Docs. 42, 61, 64), and Plaintiff's Opposition thereto (Docs. 52, 66).  After consideration of these pleadings, and for the reasons set out below, it is recommended that the Motion for Summary Judgment of Defendant Brooks be granted and that Plaintiff's action against this Defendant be dismissed with prejudice.

I.  FACTS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.  On or about March 30, 2006, while incarcerated at Fountain Correctional Facility

("Fountain"), Plaintiff, a seventy-six-year-old inmate, was transported to a private physician's office to be fitted with a hearing aid. (Doc. 7 at 5; Doc. 42, att. 1 at 1). The transporting officers were Defendant, Correctional Officer James Brooks, and Correctional Officer Christopher Johnson. (<u>Id.</u>).

According to Plaintiff, at some point during the office visit, Officer Brooks instructed Plaintiff, who was handcuffed and shackled, to sit down. (Doc. 7 at 5). Because Officer Brooks issued the order "in a nasty manner," Plaintiff did not comply. He responded that he was an inmate, but he was also human. (Doc. 52 at 8). Officer Brooks then pointed his finger in Plaintiff's face and began to say something that Plaintiff did not understand because he could not hear well. (<u>Id.</u>). Plaintiff told Officer Brooks to get his finger out of his face and raised his arms "in a protective manner." (<u>Id.</u> at 9). Officer Brooks then snatched Plaintiff's handcuffs, which scraped Plaintiff's wrist, causing it to bleed. (<u>Id.</u>). When a nurse went to get a bandage for Plaintiff's wrist, Officer Brooks slapped Plaintiff across the face, causing his ears to ring and the side of his face and head to hurt. (<u>Id.</u>). Plaintiff did not tell anyone what had happened. (Doc. 52 at 4; Doc. 42, att. 2 at 2). According to Plaintiff, he took the hearing aid back to the prison without being fitted by the doctor because the side of his face and ear were hurting. (Doc. 52 at 9).

2

Upon return to the prison, Correctional Officer Supervisor Richard Hetrick spoke to Plaintiff about the hearing aid that he had received earlier that morning.  (Doc. 42, att. 5 at 2). Plaintiff stated that he was not wearing the hearing aid because he "wasn't use[d] to it."  (Id.).  Captain Hetrick advised Plaintiff to wear the hearing aid so that he could become accustomed to having it in his ear.  (Id.).  At no time did Plaintiff inform Captain Hetrick that he had been slapped by Officer Brooks that morning, nor did Captain Hetrick observe any sign of injury to Plaintiff's head or ear.  (Id.).  Plaintiff did not request medical attention for any injury.  (Doc. 44, att. 6 at 2).

The following day, Plaintiff told Lieutenant Robert Gandy that Officer Brooks had slapped him across the face while he was at the doctor's office.  (Doc. 52 at 5; Doc. 42, att. 4 at 1). Again, Plaintiff did not request medical attention, and, according to Plaintiff, he was not taken to the prison health unit.  (Id.).  Lieutenant Gandy assessed Plaintiff's physical condition and noticed no signs of injury from the alleged assault.  (Doc. 42, att. 4 at 2).  Lieutenant Gandy prepared an incident report based on Plaintiff's allegations.  (Doc. 42, att. 5 at 2; Doc. 42, att. 6 at 2).

On or about April 10, 2006, Captain Hetrick reviewed Lieutenant Gandy's incident report and noticed that a medical

3

examination form was not attached.  (Doc. 42, att. 5 at 2).
Captain Hetrick ordered that Plaintiff be taken to the prison
health unit for a medical assessment.  (Id. at 3).  That
examination revealed no injury.  (Doc. 42, att. 6 at 5).

   On April 21, 2006, Plaintiff filed the present § 1983 action,
and, on June 1, 2006, Plaintiff amended his Complaint to assert
an Eighth Amendment claim against Defendants Jerry Ferrell, James
Brooks, Prison Health Services, Inc. ("PHS"), Dr. Robert Barnes,
and Linda Shipman.  (Doc. 7).  On October 26, 2006, and October
31, 2006, Plaintiff filed motions to dismiss Defendants Barnes,
Shipman, PHS, and Ferrell. (Docs. 47, 51).  On November 16, 2006,
and December 8, 2006, the Court granted Plaintiff's motions to
dismiss all of the Defendants except Officer Brooks.  (Docs. 55,
57).

   In his Amended Complaint, Plaintiff claims that Defendant
Brooks violated his Eighth Amendment rights by using excessive
force against him when he slapped Plaintiff across the face.
(Doc. 7 at 5).  Plaintiff seeks compensatory and punitive damages
against Defendant Brooks in his individual and official
capacities.  (Id. at 3, 9).  Plaintiff does not assert a claim
for injunctive relief.  (Id.).

   In his Answer filed on April 19, 2007, Defendant Brooks denies
Plaintiff's allegations and asserts the defenses of qualified and
absolute immunity.  (Doc. 61).  Officer Brooks responds that, on

4

March 30, 2006, he and Officer Johnson transported Plaintiff to a private physician's office to be fitted for a hearing aid.  (Doc. 42, att. 1 at 1).  Officer Brooks states that he was the "armed" officer on the transport team whose function was to stand at a distance from the inmate and maintain security.  (Id. at 2). According to Officer Brooks, only Officer Johnson, who was unarmed, was in close proximity to Plaintiff, staying with him in confined areas, such as the waiting room and examination room. (Id.).  Officer Brooks denies having any direct contact with Plaintiff.  (Id. at 2-3).

On February 6, 2008, the Court ordered that Defendant's Answer and Special Report be treated as a Motion for Summary Judgment. (Doc. 65).  On October 31, 2006, and February 25, 2008, Plaintiff filed responses in opposition to Defendant's motion, reasserting his Eighth Amendment excessive force claim against Defendant Brooks.  (Docs. 52, 66).

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

5

that there is no genuine issue as to any material fact. . . .'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

6

of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs.,

Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

### III. DISCUSSION

As discussed above, Plaintiff seeks redress pursuant to 42

U.S.C. § 1983 for an alleged constitutional deprivation arising

out of a physical altercation between himself and Officer Brooks

that took place on March 30, 2006, when Plaintiff was being

fitted for a hearing aid at a private physician's office. (Doc.

7). Plaintiff, who was handcuffed and shackled, claims that

Officer Brooks used excessive force when he slapped Plaintiff

across the face for failing to obey an order to sit down. (Doc.

7). Defendant Brooks denies that he used excessive force against

Plaintiff and asserts the defenses of absolute and qualified

immunity.[1]

───────────────

[1]Plaintiff asserts his Eighth Amendment claim against
Officer Brooks in both his official and individual capacities.
As a state officer, Defendant Brooks is entitled to absolute
immunity from suit for damages in his official capacity. See
Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir.
1998) (state officials sued in their official capacities are
protected from suit for damages under the Eleventh Amendment).
       However, in Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th
Cir. 2002), the Eleventh Circuit held that the defense of
qualified immunity is unavailable in a case such as this,
stating: "a defense of qualified immunity is not available in
cases alleging excessive force in violation of the Eighth
Amendment, because the use of force 'maliciously and sadistically
to cause harm' is clearly established to be a violation of the
Constitution. . . ." See also Johnson v. Breeden, 280 F.3d 1308,
1321 (11th Cir. 2002) ("[I]t is clearly established that all
infliction of excessive force on a prisoner sadistically and
maliciously for the very purpose of causing harm and which does
cause harm violates the Cruel and Unusual Punishment Clause. So,
where this type of constitutional violation is established there

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress. . . .

42 U.S.C. § 1983 (1994).

The Eighth Amendment, which attaches "after conviction and
sentence," protects incarcerated prisoners, like Plaintiff, from
punishment that is "cruel and unusual." Graham v. Connor, 490
U.S. 386, 392 n.6, 394 (1989). Specifically, the Eighth
Amendment "prohibits the unnecessary and wanton infliction of
pain, . . . the infliction of pain totally without penological
justification. . . , [and] the infliction of punishment grossly
disproportionate to the severity of the offense." Ort v. White,
813 F.2d 318, 321 (11th Cir. 1987) (citing Rhodes v. Chapman, 452
U.S. 337, 346 (1981)).

In order to establish an Eighth Amendment claim against
Defendant Brooks, Plaintiff must prove both an objective and
subjective component. That is, Plaintiff must show that the

---

is no room for qualified immunity."). The only question, then,
is whether Plaintiff has alleged facts sufficient to survive a
motion for summary judgment. "If he has done so, that is the end
of the inquiry." Skrtich, 280 F.3d at 1301.

8

alleged wrongdoing was objectively "harmful enough" to establish
a constitutional violation and that Defendant "act[ed] with a
sufficiently culpable state of mind," *i.e.*, that he acted
"maliciously and sadistically to cause harm."   Hudson v.
McMillian, 503 U.S. 1, 7-8 (1992).

In Hudson, the Supreme Court recognized that, whenever
guards use force to keep order, they "must balance the need 'to
maintain or restore discipline' through force against the risk of
injury to inmates."   Hudson, 503 U.S. at 6 (quoting Whitley v.
Albers, 475 U.S. 312, 321-22 (1986)).   Thus, "the core judicial
inquiry is . . . whether force was applied in a good-faith effort
to maintain or restore discipline, or maliciously and
sadistically to cause harm."   Id. at 7.   In making this
determination, the Court considers the need for the application
of force, the relationship between that need and the amount of
force used, the threat reasonably perceived, any efforts made to
temper the severity of a forceful response, and the extent of
injury suffered.   Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S.
at 321).

Considering the evidence in the light most favorable to
Plaintiff, the question is whether a jury could reasonably
conclude that Defendant Brooks violated Plaintiff's rights under
the Eighth Amendment.   Under the circumstances of this case,
Plaintiff's allegations fail to establish a constitutional

9

violation.

Plaintiff alleges that, while at the doctor's office, Officer Brooks slapped him across the face for failing to comply with an order to sit down.  According to Plaintiff, he heard the first instruction to sit down but did not care for Officer Brooks' "nasty" tone.  So, he refused to comply.  At that point, Officer Brooks pointed his finger at Plaintiff and issued additional instructions which Plaintiff could not hear, and Plaintiff raised his arms and told Officer Brooks, "get [your] finger out of my face."  (Doc. 52 at 9).  Officer Brooks grabbed Plaintiff's handcuffs, which scraped Plaintiff's wrist and caused it to bleed.  While a nurse was getting a bandage for Plaintiff's wrist, Officer Brooks slapped Plaintiff across the face.  (Id.). Plaintiff alleges that he was seated at the time.  (Id.).

Plaintiff argues that Officer Brooks' use of force was not in response to a reasonably perceived threat but, rather, was malicious and unjustified.  The Court disagrees.

It is undisputed that Plaintiff had been taken to a private physician's office for medical treatment and that Officer Brooks and Officer Johnson had the responsibility of protecting the public by maintaining control of Plaintiff at all times.  (Doc. 42, att. 1 at 2).  Plaintiff admits that, after sitting in the waiting room, he was taken into an office where he was told to sit down, but he refused to do so because he did not like Officer

Brooks' tone.  (Doc. 52 at 8).  Plaintiff also admits that he
told Officer Brooks to get his finger out of his face.  (Id.).
Under the circumstances, Officer Brooks could have reasonably
perceived Plaintiff's actions as threatening, justifying some
measure of force to secure Plaintiff's compliance with his
orders.

Assuming Plaintiff's allegations as true, the Court is
troubled by the fact that Officer Brooks slapped Plaintiff across
the face after he had managed to force Plaintiff to comply with
his order to sit in a chair.  That being said, it is significant
that Officer Brooks was engaged in a power struggle with an
inmate in close proximity to unsuspecting patients, doctors,
nurses, and medical staff.  Regardless of how Plaintiff perceives
himself, society reasonably perceives him as a danger and a
threat[2].  Plaintiff's indignation at being spoken to in a "nasty"
tone by Officer Brooks and his consequent defiance of Officer
Brooks' order to sit down placed everyone at the doctor's office,
including himself, at risk.  As it was, Officer Brooks' measured
response quelled Plaintiff's challenge to his authority and
restored the balance of control to Officer Brooks.  Because the
evidence shows that Officer Brooks' use of force was tempered and
was applied in a good-faith effort to regain control of a defiant
inmate in the stressful and challenging environment of a public

_____

[2]Plaintiff was convicted of murder in 2001 and sentenced to
life in prison.  (Doc. 1 at 7.)

doctor's office, Plaintiff has failed to establish the subjective element of his Eighth Amendment claim.

Moreover, even if the Court were to assume that Officer Brooks' use of force was unjustified, in order to establish an Eighth Amendment claim, Plaintiff must also show that Officer Brooks' wrongdoing was objectively "harmful enough" to establish a constitutional violation.  This Plaintiff has failed to do.

Inherent in the protection afforded by the Eighth Amendment is the principle that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'"  <u>Clark v. Johnson</u>, 2000 WL 1568337, *12 (S.D. Ala. 2000) (unpublished) (quoting <u>Hudson</u>, 503 U.S. at 9-10).  Indeed, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  <u>Hudson</u>, 503 U.S. at 9 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2nd Cir. 1973)).  The objective component of an Eighth Amendment excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  <u>Hudson</u>, 503 U.S. at 9-10 (quoting <u>Whitley</u>, 475 U.S. at 327).   While the Supreme Court in <u>Hudson</u> did not define "*de minimis* use of force," it did hold that neither "serious" nor "significant" injury is required to satisfy the objective component of an Eighth Amendment claim, nor is any

12

arbitrary quantum of injury an absolute requirement of an
excessive force claim, apparently out of concerns that certain
forms of torture are capable of inflicting extreme pain without
leaving any mark or tangible injury. Id. at 9 ("Otherwise, the
Eighth Amendment would permit any physical punishment, no matter
how diabolic or inhuman, inflicting less than some arbitrary
quantity of injury."). At the same time, the court suggested
that the degree of injury received is relevant to determining
whether more than *de minimis* force was used. See id., 503 U.S.
at 10 (blows causing bruising, swelling, loosened teeth and a
cracked dental plate do not constitute a *de minimis* use of
force).

　　In the present case, there are no allegations of torture
designed to inflict extreme pain without leaving tangible injury
or conduct that otherwise is so egregious that one could
reasonably call it repugnant to the conscience of mankind.
Therefore, if Plaintiff suffered only *de minimis* injuries, that
would be an important factor in determining whether more than *de
minimis* force was used.

　　The record reflects that Plaintiff suffered no visible signs
of injury from being slapped by Officer Brooks. According to
Plaintiff, his injuries consisted of ringing in his ears and pain
on the side of his face and head. (Doc. 52 at 9). In addition,
he suffered a scrape to his wrist when Officer Brooks snatched

his handcuffs.  (<u>Id.</u>).   Other than receiving a bandage for his
scraped wrist, at no time did Plaintiff request medical treatment
related to the use of force by Officer Brooks, nor has Plaintiff
alleged any subsequent disability or infirmity arising from the
incident.

Even if the Court were to assume that Plaintiff suffered the
injuries he claims, *i.e.*, ringing in his ears, pain on the side
of his face and head, and a scratch on his wrist, those injuries
would not establish a constitutional violation under the
circumstances of this case.  In determining whether the extent of
Plaintiff's alleged injuries indicates the use of excessive
force, the Court finds instructive the types of injuries which
have been held to be insufficient to support excessive force
claims under the Eighth Amendment, such as: a scratch on inmate's
side from a correctional officer pushing, shoving, and hitting
him in an effort to force inmate to comply with an order to pick
up his hoe and get back to work, <u>Walker v. Thames</u>, 2001 WL
394911, * 6 (S.D. Ala. 2001) (unpublished); scratches on
plaintiff's elbow, bump and one-half inch skin tear behind the
ear, abrasion on the shoulder, and jaw pain from correctional
officer pushing plaintiff into a glass window while taking him to
a holding cell, <u>Lanier v. Fralick</u>, 2000 WL 1844679, *1-2, 5-6
(S.D. Ala. 2000) (unpublished); blow to the forehead with a
baton, resulting in no bruising or swelling, <u>Clark</u>, 2000 WL
1568337, *18-19; a sore, bruised ear lasting three days, <u>Siglar</u>

14

v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); bruises on a
prisoner's back from being shoved into a door frame, DeWalt v.
Carter, 224 F.3d 607, 620 (7th Cir. 2000); lacerations, bruises,
cuts, and swelling as a result of a guard hitting plaintiff's
hand with a plastic box when plaintiff reached through a trap in
the door of his cell, White v. Matti, 58 Fed. Appx. 636, 638 (7th
Cir. 2002) (unpublished); pain, swelling, and bruising from a
guard closing a cuffport door on a prisoner's hand, Outlaw v.
Newkirk, 259 F.3d 833, 839-40 (7th Cir. 2001); a bruised shoulder
from being shoved into a wall, Markiewicz v. Washington, 175 F.3d
1020, *1 (7th Cir. 1999) (unpublished); a 1.5 inch scratch on the
back of the hand from handcuffs, Schoka v. Swinney, 53 F.3d 340,
*1 (9th Cir. 1995) (unpublished); daily headaches, not requiring
treatment, from being hit with a water bucket, Lunsford v.
Bennett, 17 F.3d 1574, 1582 (7th Cir. 1994); and a sore and
swollen thumb from being hit with keys, Norman v. Taylor, 25 F.3d
1259, 1262-63 (4th Cir. 1994).

On the other hand, the following types of injuries have been
held to be sufficient to support excessive force claims: injury
to an inmate's back from guards snapping inmate's head back with
a towel, slapping inmate twice in the face, and kicking inmate,
Harris v. Chapman, 97 F.3d 499, 506 (11th Cir. 1996); cuts,
scrapes and contusions to the face, head, and body from a group
beating, Gomez v. Chandler, 163 F.3d 921, 924-25 (5th Cir. 1999);
a broken finger, Escobar v. Zavaras, 149 F.3d 1190, *3 (10th Cir.

1998) (unpublished); and permanent scarring and numbness from
handcuffs, <u>Davidson v. Flynn</u>, 32 F.3d 27, 29 n.1 (2d Cir. 1994).

Although the Court is aware that, even in the absence of
serious or significant injury, a plaintiff can establish a
constitutional claim based on excessive force, Defendant Brooks'
actions in this case, as described by Plaintiff, do not involve
diabolic or inhuman torture designed to inflict extreme pain
without leaving any mark or tangible injury, nor are they
otherwise so egregious that one could reasonably call them
repugnant to the conscience of mankind.  Assuming, as Plaintiff
alleges, that Officer Brooks unjustifiably slapped him across the
face, his injuries were *de minimis* and simply do not support his
claim that he was subjected to anything other than *de minimis*
force, which is insufficient to establish a constitutional
violation under the Eighth Amendment.

If a party "fails to make a showing sufficient to establish
the existence of an element essential to that party's case, and
on which the party will bear the burden of proof at trial," Rule
56(c) mandates that summary judgment be entered against the
nonmovant.  <u>Celotex Corp.</u>, 477 U.S. at 322.  "No material issues
can be in dispute where the plaintiff's evidence fails to
establish a constitutional violation."  <u>Bennett v. Parker</u>, 898
F.2d 1530, 1534 (11th Cir. 1990).  Therefore, since no
constitutional violation has been established, Defendant's Motion

for Summary Judgment is due to be granted.

### IV.   CONCLUSION

Based on the foregoing, it is recommended that the Motion for Summary Judgment of Defendant James Brooks be granted (Docs. 42, 61, 64), that Plaintiff's claims against this Defendant be dismissed with prejudice, and that judgment be entered in favor of Defendant Brooks on all claims.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(c); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and

17

incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 4th day of June, 2008.

s/BERT W. MILLING, JR.

UNITED STATES MAGISTRATE JUDGE